UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUDSON PRIVATE LP,

                Plaintiff,

           v.

CREATIVE WEALTH MEDIA FINANCE
CORPORATION,

                Defendant.

22 Civ. 5520 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Defendant Creative Wealth Media Finance Corporation ("Creative Wealth") removed this case from New York State Supreme Court to this Court based on diversity jurisdiction. Plaintiff Hudson Private LP ("Hudson Private") now moves to remand to state court. For the reasons that follow, the Court denies the motion.

I. **Factual and Procedural Background**[1]

This action arises out of a loan by Hudson Private to Creative Wealth to enable Creative Wealth to finance a television series, *Shadowplay*. Dkt. 1-1 at 6, 9. On July 16, 2020, Hudson Private executed a promissory note with Creative Wealth in the principal amount of $3 million. *Id.* at 9–12. The note carried a 10% per annum interest rate. *Id.* It required Creative Wealth to repay the principal in full, with interest, by the earlier of (1) the delivery of the final episode of *Shadowplay*; or (2) December 31, 2021, the "maturity date." *Id.* at 9. The note carried additional terms under which interest would accumulate at 1.5% per month on the outstanding balance after passage of the maturity date. Hudson Private claims to have not received any portion of the sum owed under the note. *Id.* at 3.

---

[1] The Court's account of the facts is derived from the parties' filings in state court initiating and removing this action, and their submissions on the instant remand motion.

On March 1, 2022, Hudson Private filed an action against Creative Wealth, claiming a default on the promissory note, in New York State Supreme Court in Manhattan. *See id.* In lieu of filing a complaint, Hudson Private filed a summons and an accompanying motion for summary judgment, pursuant to New York Civil Practice Law and Rule § 3213 (the "CPLR 3213 motion"). *See id.* Hudson Private sought $3 million in principal, contractual interest at the rate of 10% per annum through the date of collection, and additional interest at the rate of 1.5% per month from January 3, 2022[2] through the date of collection, plus attorney's fees and expenses. Dkt. 10-1 at 3.

On April 4, 2022, Hudson Private filed in state court an affidavit reflecting service of the summons and motion on "Sheryl Hassen, an employee of Creative Wealth" at Creative Wealth's offices in Toronto, Canada. *Id.* at 25–26. The parties then engaged in settlement negotiations after thrice agreeing—on April 20, 2022, on May 20, 2022, and on June 14, 2022—to extend various deadlines for the CPLR 3213 motion. *Id.* Those negotiations proved unsuccessful. Dkt. 15 at 6.

On June 28, 2022, Creative Wealth removed the matter to federal court. *See* Dkt. 1. On July 11, 2022, Hudson Private moved to remand to state court, Dkt. 9, along with a supporting declaration, Dkt. 10, and a memorandum of law, Dkt. 11. Relevant here, it argued that Creative Wealth's removal had been untimely, coming more than 30 days after Creative Wealth had been served. On July 12, 2022, this Court adjourned an initial pretrial conference scheduled for August 3, 2022, pending resolution of the motion to remand. Dkt. 13. On July 25, 2022,

---

[2] The materials before the Court do not explain why Hudson Private treats the maturity date as January 3, 2022, and not December 31, 2021, per the note's stated terms.

2

Creative Wealth opposed remand, Dkt. 15, and filed accompanying declarations, Dkts. 16, 17. On July 29, 2022, Hudson Private replied. Dkt. 18.

In an order issued August 17, 2022, the Court notified the parties that it would benefit from hearing brief testimony from the affiants who had attested to circumstances surrounding Hudson Private's attempt to serve Creative Wealth on March 16, 2022, at Creative Wealth's Toronto office. These were Gerald Gratton, Hudson Private's process server, and Cheryl Hassen, an employee of Creative Wealth's co-tenant in that office, who was present that day. Dkt. 19. On September 6, 2022, the Court held the hearing—remotely by video, with the consent of the parties—and heard direct- and cross-examination of both witnesses. *See* Dkt. 20.

## II.    Legal Standards Governing Removal

### A.    The Requirement of Formal Service

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). As a general matter, removal jurisdiction must be "strictly construed," *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002), and any doubts should be resolved against removability "out of respect for the limited jurisdiction of the federal courts and the rights of states," *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007). "[T]he party seeking to remove the action[] bears the burden of establishing federal jurisdiction . . . [and] must convince this Court that removal was proper." *Quinones v. Minority Bus Line Corp.*, No. 98 Civ. 7167, 1999 WL 225540 (WHP), at *2 (S.D.N.Y. Apr. 19, 1999) (citing *Mermelstein v. Maki*, 830 F. Supp. 180, 184 (S.D.N.Y.1993)).

3

Here, the requirements of diversity jurisdiction—complete diversity and an amount in controversy exceeding $75,000—are undisputedly met. *See* 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806). The decisive issue is therefore solely whether Creative Wealth's removal was improper. Hudson Private claims that the removal was untimely, insofar as it occurred on June 28, 2022, more than 30 days after March 16, 2022, when, it asserts, valid service was made on Creative Wealth.

Under 28 U.S.C. § 1446(b)(1), "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."

Critically, as the Supreme Court has held, the deadline for removal must be triggered "by formal process," regardless whether the defendant had informal notice of litigation. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "[A] named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Id.* at 347–48. On this basis, the Second Circuit has held that *"the commencement of the removal period could only be triggered by formal service of process*, regardless of whether the statutory phrase 'or otherwise' hints at some other proper means of receipt of the initial pleading." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 202 (2d Cir. 2001) (emphasis added).

**B.      Standards Governing Service on a Corporation in Ontario, Canada**

4

A foreign entity may be served with process pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), of which Canada is a signatory. *Tile, Inc. v. CellnTell Distrib. Inc.*, No. 20 Civ. 428, 2021 WL 2682253 (FJS) (DJS), at *2 (N.D.N.Y. June 30, 2021). In determining whether service on an entity subject to the Hague Convention was effective—that is, whether service was by a means consented to by the country in which the service occurred—courts "look[] to the service laws of that country to determine whether the employed method of service would be valid therein." *Id.*

Because Creative Wealth is located in the Province of Ontario, Canada, the parties agree that Ontario law sets the standards here for effective service. They also agree that under Ontario law governing service on a corporation, the corporation must be personally served with "'originating process' 'by leaving a copy of the document with an officer, director or agent of the corporation, or with a person at any place of business of the corporation who appears to be in control or management of the place of business.'" *Id.* (quoting Ontario Rules of Civil Procedure 16.01(1), 16.02(1)(c)).

## III. Discussion

It is undisputed that on March 16, 2022, Hudson Private attempted service of its CPLR 3213 motion—effectively its complaint—on Creative Wealth. The principal issue before the Court is whether that service was proper, that is, whether it complied with Ontario law. If so, Creative Wealth's removal on June 28, 2022 was untimely, occurring far more than 30 days after Creative Wealth had been validly served. If not, however, the removal was timely, absent some other form of service of the CPLR 3213 motion or summons upon Creative Wealth before May 29, 2022 (30 days before removal).

5

The facts relating to the events of March 16, 2022, were initially set out for the Court in a series of affidavits and declarations. Hudson Private submitted two affidavits from its process server, Gerald Gratton. Dkt. 11 at 5. In his first affidavit, dated April 2, 2022, Gratton attested, in pertinent part:

> 3. According to Plaintiff's counsel, Creative Wealth is located at 151 Bloor Street West, Suite 700, Toronto, Ontario M5S 1S4, Canada.
>
> 4. On March 16th, 2022 at approximately 12:34 p.m., I went to 151 Bloor Street West, Suite 700 where I met with a woman who verbally and affirmatively identified herself as Sheryl Hassen, an employee of Creative Wealth. I handed her the above-referenced documents, which she accepted, and informed her she was being served on behalf of Creative Wealth Media Finance Corp.
>
> 5. Ms. Hassen is Caucasian, approximately 55 years old, 5'8 tall, 155 pounds, with light brown hair.
>
> 6. I believe service has been effected upon Creative Wealth Media Finance Corp. in compliance with the laws of Canada and thus in compliance with Article 10(b) of the Hague Service Convention.

*See* Dkt. 10-2 ("Gratton Aff.") at 2–3. The documents Gratton attested serving included the summons and CPLR 3213 motion. *Id.* at 1.

In his second affidavit, dated July 10, 2022, Gratton elaborated, stating, in pertinent part:

> 3. According to Plaintiff's counsel, Creative Wealth is located at 151 Bloor Street West, Suite 700, Toronto, Ontario M5S 1S4, Canada.
>
> 4. On March 16th, 2022 at approximately 12:34 p.m., I went to 151 Bloor Street West, Suite 700. The signage on the door of Suite 700 read 'Creative Wealth Media'. [sic] There was also a note taped to the door that read 'LEAVE ALL MAIL & PACKAGES HERE, THANK YOU' with a blue bin on the floor underneath this sign. I tried to open the door but it was locked. I knocked on the door. The door was answered by a woman who appeared to be in care and control or management of Creative Wealth and who identified herself as Sheryl Hassen, an employee of the company. I advised her I had legal documents for service upon Creative Wealth Media Finance Corp. She confirmed the business was located at this address and that she would accept the documents. I handed her the above-referenced documents, which she readily accepted, and informed her she was being served on behalf of Creative Wealth Media.

6

> 5. Ms. Hassen is Caucasian, approximately 55 years old, 5'8 tall, 155 pounds, with light brown hair.
>
> 6. I believe service has been effected upon Creative Wealth Media Finance Corp. in compliance with the laws of Canada and thus in compliance with Article 10(b) of the Hague Service Convention.

Dkt. 10-3 ("Gratton Amended Aff.") at 2–3. Gratton again attested that the summons and CPLR 3213 motion were among the documents served. *Id.* at 1.

Creative Wealth, however, provided a different version of the events, in the form of a July 21, 2022, declaration from Cheryl Hassen. Dkt. 16 ("Hassen Decl."). Hassen stated that she had read Gratton's two affidavits claiming to have "served [Creative Wealth] with certain legal documents by providing them to me." *Id.* at 1. Hassen attested, in pertinent part:

> 2. I am the Head of Development for Epic Story Media, which is located at 151 Bloor Street West, Suite 700, in Toronto, Ontario. Epic Story Media sublets space from Creative Wealth but is not related to Creative Wealth.
>
> 3. I do not recall ever receiving documents from a process server for Creative Wealth, and the affidavits of service contain statements that cannot be accurate.
>
> 4. While I cannot rule out the possibility that someone handed to me a package of documents that were meant for Creative Wealth, I do know that I would not have agreed to "accept" documents for service on Creative Wealth, and I certainly would never have told anyone that I am an employee of Creative Wealth because I am not and I never have been.
>
> 5. I also do not understand how the process server could say that I "appeared to be in care and control or management of Creative Wealth." I would never have said or suggested that to anyone, since I do not even work for that company.

*Id.* at 1–2.

Upon review of these competing submissions, the Court determined that, to resolve the dispute over the adequacy of Hudson Private's attempted service on Creative Wealth, it would be necessary to hear brief testimony from Gratton and Hassen. Under Second Circuit law, affidavits of service establish a *prima facie* case that service was effected or attempted in the manner

7

described therein. *See Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002); *see also Haskell Co. v. Radiant Energy Corp.*, No. 05 Civ. 04403 (DLI) (MDG), 2007 WL 2746903, at *7 (E.D.N.Y. Sept. 19, 2007). However, the Circuit has held, "[a] defendant's sworn denial of receipt of service . . . rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing." *Old Republic*, 301 F.3d at 57. Pursuant to the guidance in *Old Republic*, courts in this District order evidentiary hearings where needed to resolve conflicting affidavits regarding service of process. *See, e.g., Davis v. Musler*, 713 F.2d 907, 914 (2d Cir. 1983) (ordering evidentiary hearing where defendants stated in "unequivocal language" alibi for physical presence away from the location of alleged service); *Tile, Inc.*, 2021 WL 2682253, at *4 (ordering evidentiary hearing where defendant denied receiving service at place of business during mandatory Ontario-wide COVID-19 lockdown in spring 2020); *Almukthar v. S&A Trading USA, Inc.*, No. 21 Civ. 0190 (GTS) (CFH), 2021 WL 5883416, at *2 (N.D.N.Y. Dec. 13, 2021) (ordering evidentiary hearing where defendants unequivocally denied operating business at location visited by process server). Such a dispute was evident here, inasmuch as Hassen's declaration not only denied accepting service, but also denied important details in Gratton's affidavits, including that she had identified herself as an employee of Creative Wealth, that she had verbally agreed to accept service of legal documents on behalf of Creative Wealth, and that she "appeared to be in care and control or management of Creative Wealth." Gratton Amended Aff. at 3.

The hearing was held September 6, 2022. *See* Dkt. 20. The Court first heard testimony from Gratton, who was questioned first by counsel from Hudson Private and then by counsel for Creative Wealth. The Court then heard testimony from Hassen, who was questioned first by counsel for Creative Wealth and then by counsel for Hudson Private. The Court put questions to

each witness. Each witness's testimony was brief, and centered on: (1) whether the documents at issue were delivered by Gratton to Hassen on March 16, 2022; and (2) whether such service comported with Ontario law, which required Gratton to have left a copy of the documents at issue either "with an officer, director or agent of the corporation" or "with a person at any place of business of the corporation who appears to be in control or management of the place of business." Ontario Rule of Civil Procedure 16.02(1)(c).

The Court distills the pertinent portions of the testimony below in addressing whether the standards of service under Ontario law were met. As a general proposition, the Court found Hassen's testimony credible in its entirety. Gratton's testimony, however, although given in good faith, called into doubt salient representations in his affidavits.

***Whether the service documents were delivered to Hassen***: As to the delivery of the service documents to Hassen, the Court finds, based on the testimony and affidavits, that Gratton delivered and Hassen received a package containing the service documents on March 16, 2022. Gratton credibly so testified, and he did not have a substantial motive to fabricate this occurrence. And Gratton's knowledge of Hassen's name (albeit misspelled) and general appearance as a person working in Suite 700, necessarily establishes Gratton's presence there that day.

Moreover, in her testimony, Hassen acknowledged receiving, from time to time, packages on behalf of Creative Wealth at the door of the suite which Creative Wealth shared with Hassen's employer Epic Story Media. To be sure, Hassen could not recall receiving a package specifically from Gratton—whose face she saw over video during the remote hearing and did not remember having seen before—and denied having ever received a package described to her as consisting of "legal documents." But, when questioned, she acknowledged that the

9

most plausible explanation for Gratton's correct identification of her name and appearance in his affidavit was that, in fact, she had interacted with him at the door to Suite 700 in the course of accepting a package on March 16, 2022, on behalf of Creative Wealth. Accordingly, the Court finds that Gratton, on behalf of Hudson Private, handed Hassen the process on March 16, 2022.

***Whether delivery to Hassen qualified as effective service***: On the issue whether delivery to Hassen qualified under Ontario law as effective service, the Court finds that it did not.

It is undisputed that Hassen was not "an officer, director or agent of the corporation." Ontario Rule of Civil Procedure 16.02(1)(c). She testified, without contradiction, that she did and does not work for Creative Wealth. Instead, as of March 16, 2022, Hassen was a new employee of Epic Story Media, a company which was not affiliated with Creative Wealth but was merely a co-tenant of Suite 700.

As to whether Hassen "appear[ed] to be in control or management of the place of business," the alternative showing permitted by Ontario Rule of Civil Procedure 16.02(1)(c), the Court finds, emphatically, that she did not. In his initial affidavit, Gratton did not attest that Hassen had so appeared to him. Instead, he stated that Hassen had "verbally and affirmatively identified herself as Sheryl Hassen, an employee of Creative Wealth." Gratton Aff. at 2. It was only in his amended affidavit, prepared nearly four months after his delivery of the service package and after the dispute had arisen about the adequacy of service under Ontario law, that Gratton added language stating that Hassen had appeared to be in control or management of Creative Wealth. *Compare* Gratton Amended Aff., *with* Gratton Aff. This added language was conclusory. It did not set out the factual basis on which Gratton had purportedly drawn that conclusion.

The Court finds both that Hassen did not "appear to be in control or management" of Creative Wealth's place of business on March 16, 2022, and that Gratton, in real time, did not subjectively perceive Hassen to be in such control or management. To the extent that Gratton attested in his declarations that Hassen had verbally identified herself to him as an employee of Creative Wealth, the Court rejects that testimony. Hassen had no reason to fabricate such an employment relationship to Gratton, and she credibly testified that she did not do so. Gratton's error on this point may well have stemmed from a mere failure of recollection—his first affidavit was signed 17 days after his visit to Suite 700—but it is clear that Hassen said no such thing. Nor does the Court find other verbal interactions between the two of consequence, apart from Hassen's apparently having given Gratton her name after Gratton, as he credibly testified, told her he could not leave the package in the bin outside the door but was required to give it to a person.

Hudson Private's basis for claiming that Hassen "appeared to be in control or management of Creative Wealth's place of business" thus turns on whether the surrounding circumstances supported that inference. They did not. As Creative Wealth demonstrated during Hassen's testimony, the door to Suite 700 listed Epic Story Media alongside Creative Wealth as tenants of the suite. Gratton therefore did not have a solid basis to assume that Hassen was even affiliated with Creative Wealth as opposed to the suite's other tenant. And, the Court finds, he did not affirmatively inquire of Hassen her employment affiliation, but merely assumed that she worked for Creative Wealth. More importantly, even assuming that that assumption was fair, the assembled circumstances did not suggest that Hassen exercised control or management. As Hassen testified, she presented as a receptionist or secretary, being situated in an open area near

11

the door to the suite and wearing casual clothes. Indeed, Gratton admitted that Hassen presented as, most likely, a "secretary."

Absent other badges of control or management, a secretary receiving a package at the door to a suite would not ordinarily be said to "appear to be in control or management" of the entity therein. And Gratton did not attest to any other aspects of Hassen's bearing or comportment, or of the arrangement of the suite, that would support such an inference. And U.S. court precedents applying the Ontario service statute have similarly concluded that office assistants, secretaries, and receptionists were not individuals "appear[ing] to be in control or management" of a corporation. *See, e.g., Narbut v. Manulife Fin. Corp.*, No. 17 Civ. 10639 (ADB), 2020 WL 3577939, at *5 (D. Mass. 2020) ("Accordingly, the Court finds that service on Defendant's senior legal assistant was not service on an 'officer, director or agent . . . or with a person . . . who appears to be in control or management of the place of business' within the meaning of the Ontario Rules of Civil Procedure, and was therefore improper." (citing Ontario Rule of Civil Procedure 16.02(c))); *Granger v. Nesbitt*, No. 21 Civ. 11066 (TSH), 2021 WL 4658658, at *5 (D. Mass 2021) (service upon receptionist not valid under Ontario service law because individual "is neither a person in control or management of [the company] nor a person authorized or designated to accept service of legal papers"); *In re SkyPort Glob. Commc'ns, Inc.*, 528 B.R. 297, 316 (S.D. Tex. 2015), *aff'd in part sub nom. In re SkyPort Glob. Commc'ns, Inc.*, 642 F. App'x 301 (5th Cir. 2016), and *aff'd sub nom. In re Skyport Glob. Commc'ns, Inc.*, 661 F. App'x 835 (5th Cir. 2016) (service upon receptionist not valid under Ontario law because the individual "is not a person who appears to be in control or management of the place of business").

The Court therefore finds that Hudson Private has not carried its burden of proof that it effected valid service on Creative Wealth on March 16, 2022.

Finally, the Court is unpersuaded by Hudson Private's alternative suggestion that, at some unspecified point by mid-April 2022, it had served Creative Wealth's counsel with its summons and motion. Although the record is clear that informal discussions among the parties' counsel toward potential settlement were by then underway, and although it is reasonable to infer that Hudson Private's court filings had found their way to Creative Wealth's counsel, Hudson Private has not adduced evidence of any act constituting service. And only "formal service of process" can trigger the "commencement of the removal period" in this Circuit. *Murphy Bros.*, 526 U.S. at 347–48.

Accordingly, as Hudson Private has not met its burden to prove that it properly served the CPLR 3213 motion and summons on Creative Wealth on or before May 29, 2022, Creative Wealth's removal on June 28, 2022 was timely. The Court therefore denies Hudson Private's motion for remand. *See, e.g., Mintz & Gold LLP v. Daibes*, No. 15 Civ. 1218 (PAE), 2015 WL 2130935 (S.D.N.Y. May 6, 2015) (denying motion for remand based on finding of inadequate service), *aff'd*, 643 F. App'x 35 (2d Cir. 2016); *Stop & Shop Supermarket Co. v. Goldsmith*, No. 10 Civ. 3052 (KMK), 2011 WL 1236121 (S.D.N.Y. Mar. 31, 2011) (same); *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 361 (S.D.N.Y. 2006) (same).

## CONCLUSION

For the reasons stated above, the Court denies Creative Wealth's motion for remand. The Clerk of Court is respectfully directed to close the motion at Docket 9. The Court will issue a separate order as to next steps in this litigation.

13

SO ORDERED.

                                              *Paul A. Engelmayer*
                                              _____
                                                    PAUL A. ENGELMAYER
                                                    United States District Judge

Dated: September 21, 2022
       New York, New York