UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HUDSON PRIVATE LP,

                Plaintiff,

v.

CREATIVE WEALTH MEDIA FINANCE CORP.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 22-cv-05520-PAE

**DEFENDANT CREATIVE WEALTH MEDIA FINANCE CORP.'S
MEMORANDUM OF LAW IN OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

 

HERRICK, FEINSTEIN LLP
William R. Fried, Esq.
Samuel J. Bazian, Esq.
2 Park Avenue
New York, New York 10016

Defendant Creative Wealth Media Finance Corp. ("Creative Wealth") respectfully submits this memorandum of law in opposition to Plaintiff Hudson Private LP's ("Hudson") motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## PRELIMINARY STATEMENT

In an attempt to obtain summary judgment, Hudson incorrectly frames the instant action as though it involves a simple default under a promissory note. Hudson's version of the facts is straightforward, but incomplete. It claims that it loaned a total of $3 million dollars to Creative Wealth for use in the production of a television series called "Shadowplay," Creative Wealth provided Hudson with a promissory note for the loan, and Creative Wealth did not repay the loan by the maturity date. Therefore, according to Hudson, it is entitled to summary judgment on its claim that Creative Wealth defaulted under the note.

What Hudson fails to mention is that the parties' transaction was not that straightforward. Indeed, the transaction was also governed by a Loan and Security Agreement, which not only incorporated the terms of the note upon which Hudson relies, but *also* the terms of a binding financing term sheet (the "Shadowplay Term Sheet") that Hudson and Creative Wealth entered into contemporaneously with the note.

Significantly, the Shadowplay Term Sheet provides that Hudson would be entitled to repayment of its financing plus interest and a percentage of net profits from the Shadowplay project *if and only if* Shadowplay generated sufficient gross receipts. Indeed, the Shadowplay Term Sheet explicitly states that "Source of Repayment" for these amounts would be "the gross receipts generated by the Project, if any…" Cloth Ex. B at 2.[1]

---

[1] "Cloth Decl." refers to the Declaration of Jason Cloth dated December 16, 2022, filed simultaneously herewith.

This arrangement made sense for Hudson, since it provided Hudson with potential upside if the project was successful (*i.e.*, generous interest and a percentage of net profits). In fact, Hudson acknowledged in the Term Sheet that its investment involved the risk that it would not be repaid. It represented and warranted that it "has relied on its own examination of the investment hereunder including, but not limited to, the Loan and Security Agreement and the merits and risks involved. [Hudson] is aware that it may be required to bear the financial risks of this investment for an indefinite period of time." *See* Ex. 2 at p. 5. Ultimately, the project did not generate sufficient gross receipts to repay Hudson's financing—a risk that Hudson acknowledged—and therefore no amount is due and owing to it.

Hudson's motion for summary judgment should be denied for the simple reason that the Shadowplay Term Sheet contradicts its claim that Creative Wealth defaulted under the note. At the very least, there are material issues of fact concerning the parties' agreement, precluding the entry of summary judgment. Creative Wealth therefore respectfully requests that the Court deny Hudson's motion in its entirety and direct the parties to proceed with discovery.

## STANDARD OF REVIEW

Summary judgment is appropriate only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "The initial burden of demonstrating the absence of a disputed issue of material fact lies with the moving party." *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999). In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Yeshiva Chofetz Chaim Radin, Inc. v. Village of New Hempstead*, 98 F. Supp.2d 347, 350 (S.D.N.Y. 2001) (citations omitted). Said another way, "[t]he evidence of the non-movant is to be believed." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Yeshiva*, 98 F. Supp. at 350 (citation omitted).

## ARGUMENT

### A. The Note Must Be Read Together with a Financing Term Sheet That the Parties Entered into Simultaneously

It is well-settled under New York law that "[w]here several instruments constitute part of the same transaction, they must be interpreted together. In the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction will be read and interpreted together, it being said that they are, in the eye of the law, one instrument." *BWA Corp. v. Alltrans Exp. U.S.A., Inc.*, 112 A.D.2d 850, 852, 493 N.Y.S.2d 1, 3 (1st Dep't 1985).

The Second Circuit has similarly held that "[g]enerally, separate writings are construed as one agreement if they relate to the same subject matter and are executed simultaneously." *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 53 (2d Cir. 1993); *see, e.g.*, *Goodridge v. Harvey Grp., Inc.*, 778 F. Supp. 115, 130 (S.D.N.Y. 1991) (holding that transactional documents which "refer to and incorporate each other, and all facilitate the same transaction[,]" including "all elements of those agreements . . . must be interpreted together and function as if they were one instrument").

In this action, Hudson seeks judgment against Creative Wealth pursuant to the terms of an Amended and Restated Promissory Note dated July 6, 2020 and July 16, 2020 ("Note") that Creative Wealth gave to Hudson in connection with $3,000,000 in funds that Hudson advanced to Creative Wealth to finance a television series called "Shadowplay." Conover Decl., Ex. A.[2]

---

[2] "Conover Decl." refers to the Declaration of Christopher Conover, dated November 28, 2022. [ECF Doc. No. 47.]

According to Hudson, the Note is in default because Creative Wealth did not pay the principal and interest due thereon by the Maturity Date of (1) twelve months after "delivery" of the final episode of the show; or (ii) December 31, 2021. Conover Decl. ¶ 4, Ex. A § 2.1.

But Hudson's papers knowingly omit the fact that the Note was only one of three transactional documents that the parties contemporaneously entered into in connection with the Shadowplay financing. Indeed, Hudson and Creative Wealth first entered into a Loan and Security Agreement ("LSA"), dated as of July 7, 2020 (*see* Cloth Decl., Ex. A), which incorporated not only the terms of Note, but also a document titled, Term Sheet Financing For Series Project Entitled "Shadowplay" (Episodes 101-108) ("Series")), dated as of July 7, 2020, as amended on July 16, 2020 (the "Term Sheet"). *See* Cloth Decl., Ex. B.

Indeed, the LSA, which set out the terms upon which Hudson agreed to advance funds to Creative Wealth, provided that the Note and Term Sheet were "attached to this Agreement and form an integral part hereof." *See* LSA at p. 1. Thus, it is clear that all three documents—the LSA, Note and Term Sheet—govern the parties' relationship with respect to the Shadowplay financing. In fact, Hudson and Creative Wealth entered into the Note and Term Sheet at the same time—the Amended and Restated Promissory Note upon which Hudson relies is dated as of July 6, 2020 and July 16, 2020, and the Term Sheet is dated as of July 7, 2020, as amended on July 16, 2020. *Compare* Conover Decl., Ex. A *with* Cloth Decl., Ex. B.

Because these transactional documents were entered into at the same time and govern the same subject matter, under New York law, they must be considered as one agreement and interpreted together. *Commander Oil*, 991 F.2d at 53; *Goodridge*, 778 F. Supp. at 130.

To the extent that Hudson claims that the Note (and not the Term Sheet) governs the parties' transaction because the Note provides that it contains the "entire agreement" between the

4

parties (Conover Decl., Ex. A § 5.13), that argument should be rejected because all three transactional documents contain similar language. Cloth Decl., Ex. A § 8.8 ("This [LSA], the Note and the documents, instruments and agreements delivered (or to be delivered) pursuant hereto shall constitute the entire agreement between the parties . . ."); Cloth Decl., Ex. B at p. 7 ("This Term Sheet contains the entire understanding of the Parties relating to its subject matter and supersedes and replaces all prior agreements and understandings, written or oral."). At the very least, these clauses present a material issue of fact as to which of the transactional documents govern.

### B. The Term Sheet Makes Clear That Hudson Would Not Be Repaid Unless Sufficient Receipts Were Generated from the Shadowplay Project

The Term Sheet memorialized that Creative Wealth and a non-party, Shadowplay Series Holdings UK Limited, previously entered into an agreement under which Creative Wealth agreed to finance the production of Shadowplay (*see* Cloth Decl., Ex. C), and that Hudson would be advancing $3,000,000 to Creative Wealth (in two separate advances) to partially fund Creative Wealth's financing obligations. *See* Cloth Decl., Ex. B at p. 1.

Significantly, the Term Sheet provides that the source of repayment of Hudson's $3,000,000 advance to Creative Wealth—which the Term Sheet refers to as the "Loan" (*see id.* at p. 1)—along with interest and other amounts, would be from the gross receipts of the Shadowplay project in accordance with a payment waterfall set forth in a separate Collection Account Management Agreement ("CAMA") pursuant to which various parties were to be paid out of the gross receipts from the Shadowplay project:

| Source of Repayment | The Loan, inclusive of the Facilitation Fee, the Interest and the Net Profit Participation (defined below) ***shall all be recouped from gross receipts generated by the Project, if any***, in accordance with the Collection Account Management Agreement ("CAMA"). |
|---|---|

*Id.* at p. 2 (emphasis added).

Thus, no amounts were repayable to Hudson unless Shadowplay generated sufficient gross receipts. Hudson was aware and acknowledged that its investment involved the risk that it would not be repaid. Indeed, it represented and warranted in the Term Sheet that it "has relied on its own examination of the investment hereunder including, but not limited to, the Loan and Security Agreement and the merits and risks involved. [Hudson] is aware that ***it may be required to bear the financial risks of this investment for an indefinite period of time***." *Id.* at p. 5 (emphasis added). Ultimately, the project was not as successful as anticipated, and Shadowplay did not generate sufficient gross receipts to repay Hudson. Therefore, no amount is due and owing to Hudson from Creative Wealth or any other party.[3]

For the foregoing reasons, Hudson's motion for summary judgment on the Note should be denied. Considering the transactional documents in a light most favorable to Creative Wealth (as required), it is clear that any obligations under the Note were subject to the condition that the Shadowplay project generate sufficient gross receipts. Any other holding as a matter of law would not only require a determination of the parties' intent—an issue that is "'notoriously inappropriate' for summary disposal" (*Res. Funding Corp. v. Congrecare, Inc.*, 1994 WL 24825, at *8 (S.D.N.Y. 1994)—it would also render the Term Sheet—and the LSA, which incorporates the Note *and* the Term Sheet—meaningless.

At the very least, the provisions in the Note and Term Sheet are contradictory or ambiguous, rendering summary judgment inappropriate. *Morse, Zelnick, Rose & Lander, LLP v.*

---

[3] Hudson's claim that Creative Wealth "acknowledged" in a letter to Hudson's auditor that "the Maturity date of the Shadowplay Loan is December 31, 2021" is of no moment. Conover Decl., ¶ 11, Ex. B. The apparent purpose of the letter—which was on Hudson's letterhead—was merely to confirm to Hudson's auditors the amount of outstanding principal and interest as of December 31, 2020, and not that Creative Wealth was liable to repay the Loan. Conover Decl., Ex. B. As stated above, repayment of those outstanding amounts was conditioned on Shadowplay's generation of sufficient gross receipts. Cloth Decl., ¶¶ 12-13.

*Ronnybrook Farm Dairy, Inc.*, 92 A.D.3d 579, 579, 939 N.Y.S.2d 365, 366 (1st Dep't 2012) ("There is a triable issue of fact as to whether the preconditions to the payment of plaintiff's note have been satisfied. The May 25, 2000 promissory note, which is the basis for this action, and the May 25, 2000 letter agreement must be read together."); *Madeleine, L.L.C. v. Casden*, 950 F. Supp. 2d 685, 696 (S.D.N.Y. 2013) ("As set forth above, this Court has found by a preponderance of the evidence that various agreements—notably the Supplemental Agreement and Amendment No. 1 thereto, the Consulting Agreement, the Promissory Note, the Pledge Agreement, and the CPLLC/DevCo operating agreement, were all intended to be read together. . . . When the Supplemental Agreement is read together with the other agreements discussed above, it is clear that the repayment of the Loan was to be from distributions relating to the operations of CPLLC/DevCo, not from the Consulting Fees. Thus, when all of the agreements are read together, Casden has not breached the Note or Pledge Agreement and judgment must be entered in his favor.").

Accordingly, Creative Wealth respectfully requests that the Court deny Hudson's motion for summary judgment and direct the parties to engage in discovery.[4]

---

[4] Creative Wealth notes that discovery has not yet commenced in this action, as Hudson stated its intention to move for summary judgment prior to discovery, which the Court permitted. [*See* ECF Doc. No. 44.] Although the Court permitted Creative Wealth to file a motion pursuant to Fed. R. Civ. P. 56(d) to seek from Hudson any transactional-related documents that were not in Creative Wealth's possession, Creative Wealth had such documents in its possession and therefore did not file such a motion. In the event the Court denies Hudson's motion for summary judgment, Creative Wealth would seek discovery from Hudson concerning its intent when entering into the various transactional documents for the Shadowplay financing.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Creative Wealth respectfully requests that the Court deny Hudson's motion for summary judgment.

Dated: New York, New York
December 16, 2022

**HERRICK, FEINSTEIN LLP**

By: */s/ Samuel J. Bazian*

William R. Fried
Samuel J. Bazian
Two Park Avenue
New York, New York 10016
(212) 592-1400

*Attorneys for Defendant Creative Wealth Media Finance Corp.*