# EXHIBIT A

## LOAN AND SECURITY AGREEMENT

This Loan and Security Agreement (this "**Agreement**") is dated as of July 7, 2020 ("**Effective Date**"), by and among **CREATIVE WEALTH MEDIA FINANCE CORP.**, a Canadian corporation with offices at `5` Bloor St. West, Suite 700, Toronto, Ontario M5S 1S4, (the "**Borrower**"); and **HUDSON PRIVATE LP**, with principal offices at 15 East Central Avenue, Pearl River, New York 10965 ("the "**Lender**"; all references to "Lender" herein mean, collectively, all of such Parties as from time to time hold all or any portion of the Lender's rights under the Loan and this Agreement; and "**Lender Party**" means any of such Parties from time to time). This Agreement sets out the terms upon which Lender is prepared to make a loan to Borrower to fund production costs for that certain series entitled "**Shadowplay**" (Episodes 101-108 (the "**Project**")

The Borrower and Lender (collectively, the "**Parties**" or "**parties**") hereby agree as follows:

### 1. GENERAL

### 1.1 Schedule

The following schedules are attached to this Agreement and form an integral part hereof:

**SCHEDULE A** – Form of Note
**SCHEDULE B** – Financing Term Sheet

### 2. AGREEMENT TO LEND

### 2.1 Loan

2.1.1 Subject to the terms and conditions required to be satisfied in Paragraph 5 below, and in consideration of Borrower's agreement, representations, warranties and covenants herein, Lender agrees to make available to the Borrower a loan in the total amount of **$1,500, 000.00**, in US Dollars ("**Loan**").

### 2.2 Interest Rate

2.2.1 **Interest.** Subject to the rights and recourses of Lender hereinafter, all amounts of the Loan disbursed in accordance with this Agreement and which remain unpaid from time to time will bear an annual interest rate in an amount equal to ten (10%) percent of the Loan or the maximum interest rate allowable by law if said rate equals or exceeds the lawful maximum interest Rate (the "**Interest**").

2.2.2 **Limitation on Interest.** It is the intention of the parties hereto to conform strictly to applicable usury laws under the laws of the State of New York. Accordingly, all agreements between Borrower and the Lender with respect to the Loan is hereby expressly limited so that in no event, whether by reason of acceleration of maturity or otherwise, shall the amount paid or agreed to be paid to the Lender or charged by any Lender for the use, forbearance or detention of the money to be lent hereunder or otherwise, exceed the maximum amount allowed by law. If the

Loan would be usurious under applicable law, then, notwithstanding anything to the contrary in the this Security Agreement the aggregate of all consideration which constitutes interest under applicable law that is contracted for, taken, reserved, charged or received under this Agreement shall under no circumstances exceed the maximum amount of interest allowed by applicable law, and any excess shall be credited on the Note by the holders thereof.

### 2.3 Event of Default

Lender shall have no obligation to fund the Loan at any time after the occurrence of an Event of Default, unless such Event of Default has been cured, to Lender's satisfaction, within the applicable time period permitted hereunder (if any).

### 2.4 No Obligation to Fund Prior to Satisfaction of Conditions Precedent

Lender shall not be obligated to fund the Loan if any condition precedent in Paragraph 5 below has not been met to Lender's satisfaction.

### 2.5 Promissory Note

2.5.1 Execution and Delivery. Prior to Lender making the Loan, and as a condition thereof, Borrower shall execute in Lender's favour and deliver to Lender one promissory note (the "**Note**") in a form acceptable to Lender in the principal amount of the Loan (i.e., **USD$1,500,000.00)** and with any interest due (the "**Repayment Amount**").

2.5.2 Balance of Note. The amount and date of all amounts paid or repaid on the Note, shall be indicated in Lender's books so that the principal balance owing from Borrower to Lender on the Note and payment of any costs or expenses payable hereunder will be reflected therein; and the parties hereto agree that said balance and each entry shall be presumptive evidence that such balance exists, and that such payments were made, in the amounts written.

2.5.3 Payment in Full. The Note shall be marked "**cancelled**" and returned to Borrower when Borrower has indefeasibly paid the Repayment Amount to Lender.

### 2.6 Maturity and Default Date

2.6.1 Unless sooner paid, all unpaid amounts of the total amount of the Loan, the interest thereon pursuant to this Agreement shall be due and payable on, and Borrower shall pay the same to Lender not later than, the date which is the earlier of (i) twelve (12) months from the "delivery" of the final episode of the Project, or (ii) December 31, 2021 ("**Maturity Date**").

2.6.2 Upon the occurrence of an Event of Default as stated in Paragraph 7 below, such amounts are declared due and payable by Lender or made automatically due and payable. In the event the Borrower has not fully paid the Repayment Amount by the Maturity Date or an Event of Default has occurred, Borrower shall be deemed in default of this Agreement as of such date (the "**Default Date**").

2.6.3 Notwithstanding the preceding, amounts outstanding under this Agreement shall immediately become due and payable pursuant to Paragraph 7.2 below.

## 2.7 Default Interest Rate Increase

2.7.1 Default Interest Rate Increase. Borrower agrees that in the Event of Default, in addition to any and all other rights and remedies of Lender hereunder, under the Loan Documents or otherwise at law or in equity, that Lender shall be paid additional interest of 1.5% per month (the "**Additional Interest**") commencing on the first business day of the next month on the Repayment Amount until such time as all amounts due are fully repaid. The Additional Interest shall not be compounded.

## 3. SECURITY INTEREST AND COLLATERAL; GUARANTEES

### 3.1 Assignment of Proceeds

To secure the repayment of the Repayment Amount and the performance of its obligations to Lender, Borrower hereby assigns and grants to Lender a security interest in all right, title and interest of every kind and nature whatsoever in and to its right to Gross Receipts, and, without limiting the generality of the foregoing, Borrower's rights, including all rights to receive payment, under any distribution, license, sale, presale or other agreement with any other party relating in any manner to the Project, whether now existing or hereafter arising (the "**Collateral**"), including, without limitation, under the Term Sheet between Shadowplay Series Holdings UK Limited and Borrower dated January 15, 2019 (the "**Master Term Sheet**").

"**Gross Receipts**" means all cash or other consideration received by or credited to Borrower (and/or their affiliates, assignees, designees and successors), which arises out of, is paid on account of, or constitutes proceeds of, the Project, any exploitation of the Project, or any assets of or rights in the Project, and also including any underages in respect of the Project from any and all distribution and exploitation of the Project in any and all media now known or hereafter devised, throughout the universe in perpetuity, in any and all languages, and any of its allied, underlying or incidental rights (copyright, trademark and intellectual property rights in and to the Project), including without limitation, exploitation of motion picture rights, all television rights (pay, free, film, tape, cassette, cable, live and otherwise) and all allied and incidental rights in the Project, including by way of further illustrations, the exploitation of any and all sequel and remake rights, music rights, soundtrack album rights, merchandising rights, publishing rights, radio rights, stage rights and promotional and advertising rights (net of fees and expenses payable to third party sales agents as approved in writing by Lender or other costs actually incurred by Borrower in connection with securing such amounts), but specifically excluding any proceeds from third party financiers of the Project (which amounts shall be used solely to reduce the cost of production of the Project).

### 3.2 Lender's Security Interest

3.2.1 (Grant of Security: Borrower hereby irrevocably grants Lender a Security Interest in and to the Collateral. To the extent any materials or rights in and to the Project or any other item of Collateral are not yet in existence or not yet acquired, such materials and rights are hereby

assigned and conveyed to Lender by way of present assignment of future rights. This Agreement shall constitute a security agreement within the meaning of the New York Uniform Commercial Code.

3.2.2 Tax Credits: Lender shall subordinate its security interest solely in any proceeds of the tax credits financed by a financier of the tax credits that are required to repay any tax credit financier's loan and any credit facility of Borrower.

3.2.3 Remedies: It is acknowledged and agreed that at any time after the occurrence of an Event of Default (unless such Event of Default is cured within the applicable time period (if any) permitted hereunder), Lender shall be entitled to exercise the remedies described herein including those described in Paragraph 7.2 hereof.

## 4. REPRESENTATIONS AND WARRANTIES

In order to induce Lender to enter into this Agreement, Borrower agrees, represents and warrants to Lender as follows (which agreements, representations and warranties shall survive the execution and delivery, and any termination, of this Agreement):

### 4.1 Organization

Borrower is a Canadian corporation. Borrower is a legally existing entity in good standing, duly organized and existing under the laws of its jurisdiction as set forth in the preceding sentences of this Paragraph and has the power, permits and licenses and authority to own its properties and to transact the business in which it is engaged in all places at which it engages in business. It maintains a place of business and maintains its books and records at the addresses set forth herein. It shall notify Lender immediately of any change of either its principal places of business or of the places where its books and records are maintained, and of any change in its name or organization.

### 4.2 Corporate or Limited Liability Company Power and Authority

It has the power and authority to execute, deliver and carry out the terms and provisions of this Agreement and to execute and deliver the Note, and all documents, instruments and agreements to be executed and delivered by it hereunder, and it has taken all corporate, limited liability company or other organizational action necessary to authorize the execution and delivery of this Agreement, the borrowing hereunder and the execution and delivery of the Note.

### 4.3 No Conflicts

Neither the execution and delivery of this Agreement or any other document, instrument or agreement to be executed pursuant hereto, nor the consummation of the transactions contemplated by this Agreement, nor compliance with the terms and provisions hereof or any other instrument, agreement or document executed in connection herewith will violate any provision of law or of any applicable regulation, order or decree of any court or governmental instrumentality or administrative body or agency, will conflict or be inconsistent with, or will result in any breach of, any of the terms, covenants, conditions or provisions of any mortgage,

indenture, deed of trust, agreement or other instrument to which it is a party, by which it may be bound or to which it may be subject, or will violate any provision of its articles or certificate of incorporation or articles of organization, bylaws or operating agreement, or other organizational documents.

### 4.4 No Pending or Threatened Legal Actions

There are no actions, suits or proceedings, pending or threatened, at law or in equity or by or before any governmental instrumentality or other agency concerning the Project, the Collateral, the Borrower, or any investigation of the affairs concerning the Project, the Collateral, the Borrower in any respect.

### 4.5 Binding Obligation

This Agreement, and the Note, and each document, instrument or agreement executed by it and delivered to Lender hereunder, when executed and delivered pursuant hereto, will constitute legal, valid and binding obligations of it, enforceable against it, in accordance with their respective terms and conditions.

### 4.6 No Other Consent

In connection with the execution, delivery, performance, validity and enforceability of this Agreement, and the Note or any other instrument, agreement or document to be executed and delivered hereunder, no consent of any Person, and no consent, license, approval, authorization, registration or declaration with any governmental authority, bureau or agency is required.

### 4.7 Ownership

It owns all rights, property and interests and Collateral assigned or conveyed by it to Lender hereunder and it has good and marketable title to all such property. Borrower owns all right, title and interest necessary to make, distribute, exhibit and otherwise exploit the Project throughout the universe.

### 4.8 No Insolvency or Bankruptcy Proceeding

No insolvency or bankruptcy proceedings of any nature are now pending or threatened by or Against Borrower.

### 4.9 Timely Performance

Borrower will duly and timely perform all of its obligations and agreements hereunder.

### 4.10 Compliance With Laws

Borrower has complied in all material respects with all provisions of all applicable laws and regulations, including those relating to their ownership of real or personal property, the conduct and licensing of their business, the payment and withholding of taxes, ERISA or other employee matters, safety and environmental matters. It is not in default under any applicable statute, rule, order or regulation of any governmental authority, bureau or agency having jurisdiction over it.

### 4.11 No Breaches

No condition, event or act has occurred which, with notice or lapse of time, or both, would constitute a breach by it of any covenant or other term or condition of this Agreement, the Distribution Agreement or any other agreement entered into in connection with any such agreements. It is not in default under the agreements to which it is a party nor under any law or regulation applicable to the conduct of its business.

### 5. CONDITIONS PRECEDENT

Notwithstanding anything to the contrary contained herein, Lender shall not be obligated to disburse the Loan unless all of the following conditions precedent, including but not limited to the following fully executed documents, instruments and agreements (each a "**Condition Precedent**" and collectively, "**Conditions Precedent**"), have been satisfied to the satisfaction of Lender and its legal advisors:

**5.1 Deliverables to Lender.** Lender shall have received each of the following:

5.1.1 Loan Agreement. This Agreement, duly executed by Lender and Borrower.

5.1.2 Operating Agreement. If applicable, copies of the Operating Agreement in respect of the Borrower, duly executed by all parties thereto.

5.1.3 Note. The Promissory Note for the Loan duly executed by Borrower.

5.1.4 Articles of Organization or Incorporation. Duly certified copies of the articles of organization or articles of incorporation, or the equivalent, of Borrower together with certificates of the date of filing thereof and certificates of good standing from the appropriate authorities in the jurisdictions of their formation or incorporation, as applicable, and certificates of qualification to do business in any jurisdictions in which Borrower is required by applicable law and by the nature of its business to be qualified to do business.

5.1.5 Corporate Resolutions. Duly certified copies of resolutions from Borrower's board of directors or members, as applicable, authorizing the signatories of Lender, and such other documents relating thereto as Lender may reasonably request (including a duly certified copy of the Borrower's by-laws (if applicable).

## 6. AFFIRMATIVE COVENANTS

Borrower hereby covenants and agrees as follows:

### 6.1 General Affirmative Covenants; Deliverables.

6.1.1 a final cost statement within 5 days of receipt by Borrower;

6.1.2 notify Lender, without delay, of any Event of Default or any event which, following notice or the expiry of a delay, could constitute an Event of Default;

6.1.3 provide Lender with any information or document it may reasonably require from time to time.

### 6.2 Books and Records

Until payment in full to Lender of the Repayment Amount, Borrower shall maintain true, full and complete books and records of its financial transactions with respect to its interests in the Project in accordance with generally accepted accounting principles in the motion picture industry, and shall permit Lender (or its designee) to examine such books and records at such times during reasonable business hours as Lender (or its designee) may request, but not more than once per quarter in each calendar year (except while an Event of Default shall have occurred and be continuing), and take excerpts therefrom and make copies thereof. Until such time as payment in full of the Repayment Amount, all such books and records (or duplicates thereof) shall be maintained at its principal places of business.

### 6.3 Statements, etc.

Until payment in full to Lender of the Repayment Amount, but not more than once per quarter in each calendar year (except while an Event of Default shall have occurred and be continuing), Borrower shall furnish, or cause to be furnished, to Lender all information in connection with the Project as Lender may request, including, without limitation, the following:

6.3.1 copies of all statements and other financial information received by it or any Affiliated Person related to the Project;

6.3.2 summaries of all revenues received and income paid and payable to Borrower by Columbia or any other Person in connection with the Project;

6.3.3 During production of the Project, Borrower shall: (a) keep Lender reasonably informed as to the progress of production and the plans for continuing and completing the production and Delivery, and (b) email or send to Lender by email quarterly production progress reports through delivery of the Project.

### 6.4 Notice of Legal Proceedings

Borrower shall promptly give Lender written notice of all litigation, proceedings, controversies which in any way may adversely affect Lender's rights or Security Interest hereunder or under any of the documents referred to herein, or interruptions (i.e., Events of Force Majeure) in the production or distribution of, or claims materially affecting, the Project, and/or any of Borrower's or Lender's rights with respect thereto, and, where applicable, Borrower shall appear in and defend any and all such actions and proceedings and shall obtain and furnish to Lender from time to time, upon demand, all instruments, agreements, financial statements, documents, releases and subordinations of claims or liens as Lender may require, consistent with this Agreement, to maintain the priority of Lender's Security Interest under this Agreement.

### 6.5 Notice of Events of Default

Borrower shall give Lender prompt written notice of all Events of Default under any of the terms or provisions of this Agreement and of any changes in management, litigation, or of any other matter which has resulted in or may result in a materially adverse change in Borrower's financial condition or operations.

### 7. EVENTS OF DEFAULT

### 7.1 Specified Events of Default

At any time prior to full payment of the Repayment Amount, each of the following hereby constitutes and is referred to herein as an "**Event of Default**":

7.1.1 Borrower's failure to make (or cause to be made) the Repayment Amount in full by the Repayment Date;

7.1.2 default by Borrower in the due and timely observance or performance of the terms, provisions, covenants, conditions, agreements or obligations contained in this Agreement, the Note or in any other agreement relating to the Loan or the Project;

7.1.3 if Borrower: (i) becomes insolvent or is unable to pay its debts as they mature (including, without limitation, the Repayment Amount), (ii) makes an assignment for the benefit of creditors or to an agent authorized to liquidate any substantial amount of its properties or assets, (iii) files a voluntary petition in bankruptcy or seeking reorganization or to effect a plan or other arrangement with creditors, (iv) files an answer admitting the jurisdiction of any court and the material allegations of an involuntary petition filed pursuant to any applicable United States laws (or the laws of any other applicable country) relating to bankruptcy or reorganization, (v) joins in any such petition for an adjudication or for a reorganization or other arrangement, (vi) becomes or is adjudicated a bankrupt under the laws of any jurisdiction, (vii) applies for or consents to the appointment of a receiver or trustee for itself or for any of its properties, assets or business, (viii) allows an order to be entered against it pursuant to any applicable laws of the United States (or the laws of any other applicable country) relating to bankruptcy or reorganization, (ix) allows a

receiver or a trustee to be appointed otherwise than on its own application or consent for all or a substantial part of its properties, assets or business; or (x) becomes party to a process of execution enforced or levied by a third party on the property of the Borrower or any part thereof;

## 7.2 Remedies

At Lender's option, upon the occurrence of any Event of Default, and at any time thereafter while such Event of Default is continuing, Lender may elect that all amounts owed hereunder, including the entire Repayment Amount and any additional interest, shall immediately and without notice become due and payable, including without limitation, Lender's actual, direct, third party legal fees, costs, and expenses incurred by Lender in connection with such Event of Default. Upon the occurrence of any Event of Default, and at any time thereafter while such Event of Default is continuing, Lender may charge the Borrower reasonable fees for legal counsel, with respect to the payment to be made;

## 8. MISCELLANEOUS

### 8.1 Notices

All notices, requests, demands or other communications to the parties hereto shall be in writing and shall be deemed to have been received by the party to which sent within one (1) day after being sent by fax, email or overnight courier or five (5) days after being sent by mail, and shall be addressed to Lender or Borrower at the following addresses:

LENDER

Hudson Private LP
15 East Central Avenue
Pearl River, NY 10963
Attention: Christopher J. Conover
cconover@Hudcos.com

BORROWER

Creative Wealth Media Finance Corp.
151 Bloor St. West, Suite 700
Toronto, Ontario M5S 1S4
Attention: Jason Cloth
Fax: 905-947-9654
Email: Jason.Cloth@cwmoviefund.ca

### 8.2 No Waiver; Amendments in Writing

Except as expressly provided herein to the contrary, no failure of, nor any delay on the part of the Lender in exercising any right, power or privilege hereunder, or under any agreement, contract,

indenture, document or instrument mentioned herein, shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder, or under any agreement, contract, indenture, document or instrument mentioned herein, preclude any other or further exercise thereof, or the exercise of any other right, power or privilege; nor shall any waiver by the Lender of any right, power, privilege or default hereunder, or under any agreement, contract, indenture, document or instrument mentioned herein, constitute a waiver of any other right, power, privilege or default or constitute a waiver of any other default of the same or of any other term or provision. All rights and remedies provided herein are cumulative and not exclusive of any rights or remedies otherwise provided by law or at equity. No amendment to, or modification or waiver of, or consent with respect to, any provision of this Agreement or the Note shall be effective unless in writing and signed and delivered by Lender, and then any such amendment, modification, waiver or consent shall be effective only in the specific instance and for the specific purpose for which it is given.

### 8.3 Taxes

Any and all payments (including payments of principal, interest and all fees) by the Borrower hereunder shall be made free and clear of and without deductions for any and all present or future taxes and other taxes, levies, imposts, deductions, charges or withholdings, and all liabilities with respect thereto, excluding, taxes imposed on the Lender's income or measured by the overall net income or gross receipts of the Lender, and franchise taxes imposed on it, by the jurisdiction under the laws of which the Lender is organized or any political subdivision thereof (all such nonexcluded taxes, levies, imposts, deductions, charges, withholdings and liabilities being hereinafter referred to as "**Taxes**").

### 8.4 Governing Law

8.4.1 Governing Law. The validity, construction, enforcement, interpretation and performance of this Agreement, and the obligations arising hereunder, and any claim, controversy or dispute arising under or related hereto, the transactions contemplated hereby or the rights, duties and relationship of the parties hereto, shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts made and performed in the State of New York, without regard to the principles thereof regarding conflict of laws (other than Section 5-1401 of the New York General Obligations Law, which shall apply), and any applicable laws of the United States of America.

8.4.2 VENUE. ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THE LOAN DOCUMENTS MAY AT THE LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT SITTING IN THE BOROUGH OF MANHATTAN, CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW AND EACH PARTY WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

8.4.3 Nothing in this Agreement shall be deemed to apply to or limit Lender's right to (i) to exercise self-help remedies such as (but not limited to) setoff, (ii) foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or nonjudicial power of sale rights, (iii) obtain from a court provisional or ancillary remedies (including, without limitation, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver), or (iv) pursue its rights against any Person in a third-party proceeding in any action brought against Lender (including, without limitation, actions in bankruptcy court). Lender may exercise the rights set forth in this Paragraph, during or after the pendency of any court proceeding.

### 8.5 Cumulative Remedies; No Prior Recourse to Collateral

The enumeration herein of Lender's rights and remedies is not intended to be exclusive, and such rights and remedies are in addition to and not by way of limitation of any other rights or remedies that Lender may have in any applicable jurisdiction, or other applicable law. Lender shall have the right, in its sole discretion, to determine which rights and remedies are to be exercised and in which order. The exercise of one right or remedy shall not preclude the exercise of any others, all of which shall be cumulative. Lender shall have the right, in its sole discretion, to determine which rights and remedies are to be exercised and in which order. The exercise of one right or remedy shall not preclude the exercise of any others, all of which shall be cumulative.

### 8.6 Successors and Assigns

Lender may assign any or all of its rights and obligations hereunder without Borrower's consent or notice to Borrower; provided, however, that, unless otherwise instructed by Lender in writing, Borrower shall continue to make all payments due hereunder directly to Lender. This Agreement shall be binding upon and inure to the benefit of Borrower and its permitted successors and assigns and Lender and its successors and assigns.

### 8.7 Severability

In the event any one or more of the provisions hereof is found to be invalid, illegal or unenforceable in any respect, such provision shall be curtailed and limited only to the extent necessary to bring it within legal requirements, and the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

### 8.8 Entire Agreemeut, Counterparts

This Agreement, the Note and the documents, instruments and agreements delivered (or to be delivered) pursuant hereto shall constitute the entire agreement between the parties hereto with respect to the Loan and shall supersede all other agreements written or oral with respect thereto.

This Agreement may be executed in one (1) or more counterparts, each of which shall be deemed an original and which together shall constitute one and the same instrument. A signed and delivered facsimile copy or signature page of this Agreement, or a signed copy or signature page transmitted electronically in a portable document format (PDF), shall be binding on the party signing the facsimile or electronically transmitted copy or signature page (with such signature

page deemed accompanied by the last version of this Agreement transmitted between the parties), and such copy or signature page shall have the same effect as an original. Any party who delivers such a copy or signature page agrees to later deliver an original counterpart to any party which requests it, but failure to do so shall not affect the validity, enforceability, of binding effect of this Agreement, and the parties hereby waive any right they may have to object to such treatment.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement to be effective as of the Effective Date.

**CREATIVE WEALTH MEDIA FINANCE CORP.**

Per: */s/ Jason Cloth*

Name: Jason Cloth
Title: President

**HUDSON PRIVATE LP**

**HUDSON VALLEY WEALTH MANAGEMENT INC., as GENERAL PARTNER**

Per: */s/ Sandra M. Forman*

Name: Sandra M. Forman
Title: General Counsel

## SCHEDULE A

## FORM OF NOTE

# SCHEDULE B

# FINANCING TERM SHEET

# SCHEDULE B

# FINANCING TERM SHEET