UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
HUDSON PRIVATE LP,                    :
                                      :
                    Plaintiff,        :   Case No. 22-cv-05520-PAE
                                      :
            v.                        :
                                      :
CREATIVE WEALTH MEDIA FINANCE CORP.,  :
                                      :
                    Defendant.        :
                                      :
------------------------------------- x

# DEFENDANT CREATIVE WEALTH MEDIA FINANCE CORP.'S RESPONSE TO PLAINTIFF'S LOCAL CIVIL RULE 56.1 STATEMENT AND RULE 56.1 COUNTERSTATEMENT OF ADDITIONAL MATERIAL UNDISPUTED FACTS

Defendant Creative Wealth Media Finance Corp. ("Defendant"), by its attorneys, Herrick, Feinstein LLP, respectfully submits this response and counterstatement of additional undisputed facts to Plaintiff Hudson Private LP's Local Civil Rule 56.1 Statement ("Plaintiff's Rule 56.1 Statement"). Whenever possible, Defendant has attempted to use the defined terms as set forth in Plaintiff's Rule 56.1 Statement.

## RESPONSES TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On July 16, 2020, defendant Creative Wealth Media Finance Corp. ("Defendant") executed a Promissory Note (the "Note"), in the principal amount of $3,000,000 (the "Principal Note Amount"), in connection with a loan (the "Shadowplay Loan") made by Plaintiff to finance the series (Episodes 101 – 108) entitled *Shadowplay* (the "Project"). (Conover Decl., Ex. A).

**Response:** The assertions in this paragraph are not disputed to the extent that the Note is a document that speaks for itself. Defendant disputes the assertions in this paragraph as incomplete, since the parties also entered into a Loan and Security Agreement ("LSA"), dated as of July 7, 2020, which incorporates the terms of the Note and another document titled, Term

Sheet Financing For Series Project Entitled "Shadowplay" (Episodes 101-108) ("Series")), dated as of July 7, 2020, as amended on July 16, 2020 (the "Term Sheet"). Cloth Decl., Exs. A, B.[1]

2. Defendant duly delivered the Note to Plaintiff. (Conover Decl. ¶ 3).

**Response:** The assertions in this paragraph are not disputed.

3. In the Note, Defendant promised to pay the Principal Note Amount plus accrued interest thereon on the date which is the earlier of: (a) twelve months from the "delivery" of the final episode of the Project; or (b) December 31, 2021 (the "Maturity Date"). (Conover Decl., Ex. A).

**Response:** The assertions in this paragraph are not disputed to the extent that the Note is a document that speaks for itself. Defendant disputes the assertions in this paragraph as incomplete, since the parties also entered into the Term Sheet which provides that the source of repayment of Plaintiff's $3,000,000 advance to Defendant, along with interest and other amounts, would be from the gross receipts of the Shadowplay project in accordance with a payment waterfall set forth in a separate Collection Account Management Agreement. Cloth Decl., Ex. B at pp. 1-2. Thus, notwithstanding any "Maturity Date" in the Note, repayment was conditioned on Shadowplay's generation of sufficient gross receipts. Cloth Decl. ¶¶ 9, 11, 13.

4. The final episode of the Project aired before December 31, 2021, which means it was "delivered" prior to such date. (Conover Decl. ¶ 5).

**Response:** The assertions in this paragraph are not disputed, except to the extent it refers to the terms of the Note, which is a document that speaks for itself.

5. In all events, the Maturity Date is no later than December 31, 2021. (*Id.* ¶ 6).

**Response:** The assertions in this paragraph are not disputed to the extent that the Note is a document that speaks for itself. Defendant disputes the assertions in this paragraph as

---
[1] "Cloth Decl." refers to the Declaration of Jason Cloth dated December 16, 2022, filed simultaneously herewith.

incomplete, since the parties also entered into the Term Sheet which provides that the source of repayment of Plaintiff's $3,000,000 advance to Defendant, along with interest and other amounts, would be from the gross receipts of the Shadowplay project in accordance with a payment waterfall set forth in a separate Collection Account Management Agreement. Cloth Decl., Ex. B at pp. 1-2. Thus, notwithstanding any "Maturity Date" in the Note, repayment was conditioned on Shadowplay's generation of sufficient gross receipts. Cloth Decl. ¶¶ 9, 11, 13.

6. Under the Note, the Principal Note Amount accrued interest from July 16, 2020 at the rate of 10% per annum, compounded annually thereon. (Conover Decl., Ex. A, p. 1).

**Response:** The assertions in this paragraph are not disputed to the extent that the Note is a document that speaks for itself.

7. In Section 2.2, the Note provides that it is payable "without set-off or counterclaim, free and clear of and without deduction for any present or future taxes, restrictions or conditions of any nature." (Conover Decl., Ex. A, § 2.2).

**Response:** The assertions in this paragraph are not disputed to the extent that the Note is a document that speaks for itself. Defendant disputes the assertions in this paragraph as incomplete, since the parties also entered into the Term Sheet which provides that the source of repayment of Plaintiff's $3,000,000 advance to Defendant, along with interest and other amounts, would be from the gross receipts of the Shadowplay project in accordance with a payment waterfall set forth in a separate Collection Account Management Agreement. Cloth Decl., Ex. B at pp. 1-2.

8. In Section 5.13, the Note states that it "represents the entire agreement between the parties hereto with respect to this Note, the debt evidence[d] by this Note, and its terms and conditions." (*Id.* § 5.13).

**Response:** The assertions in this paragraph are not disputed to the extent that the Note is a document that speaks for itself. Defendant disputes the assertions in this paragraph as incomplete, since the parties also entered into the LSA and Term Sheet, each of which contains a similar provision. *See* Cloth Decl., Ex. A § 8.8; Cloth Decl., Ex. B at p. 7.

9. In a signed response to a letter from Plaintiff's auditors, Defendant's Managing Partner Jason Cloth acknowledged that, as of December 31, 2020, Defendant owed Plaintiff the principal amount of $3,000,000, plus accrued interest, under the Shadowplay Loan. (Conover Decl., Ex. B).

**Response:** The assertions in this paragraph are disputed. The apparent purpose of the letter—which was on Plaintiff's letterhead—was merely to confirm to Plaintiff's auditors the amount of outstanding principal and interest as of December 31, 2020, and not that Defendant was liable to repay the Loan. Cloth Decl. ¶¶ 12- 13.

10. In its signed response, Defendant also acknowledged that the Maturity Date of the Shadowplay Loan is December 31, 2021. (*Id.*).

**Response:** The assertions in this paragraph are not disputed to the extent that the letter is a document that speaks for itself. Defendant further states that the apparent purpose of the letter—which was on Plaintiff's letterhead—was merely to confirm to Plaintiff's auditors the amount of outstanding principal and interest as of December 31, 2020, and not that Defendant was liable to repay the Loan. Cloth Decl. ¶¶ 12- 13. Moreover, the Term Sheet provides that the source of repayment of Plaintiff's $3,000,000 advance to Defendant, along with interest and other amounts, would be from the gross receipts of the Shadowplay project in accordance with a payment waterfall set forth in a separate Collection Account Management Agreement. Cloth

Decl., Ex. B at pp. 1-2. Thus, notwithstanding any "Maturity Date," repayment was conditioned on Shadowplay's generation of sufficient gross receipts. Cloth Decl. ¶¶ 9, 11, 13.

11.  Pursuant to Section 4.1 of the Note, an "Event of Default" includes Defendant's failure to pay the Principal Note Amount or accrued interest thereon by the Maturity Date. (Conover Decl., Ex. A, § 4.1).

**Response:** The assertions in this paragraph are not disputed to the extent that the Note is a document that speaks for itself. Defendant disputes the assertions in this paragraph as incomplete, since the parties also entered into the Term Sheet which provides that the source of repayment of Plaintiff's $3,000,000 advance to Defendant, along with interest and other amounts, would be from the gross receipts of the Shadowplay project in accordance with a payment waterfall set forth in a separate Collection Account Management Agreement. Cloth Decl., Ex. B at pp. 1-2.

12.  Defendant failed to pay the Principal Note Amount plus accrued interest thereon, or any portion thereof, to Plaintiff on or before the Maturity Date (or any time thereafter). (Conover Decl., ¶ 13).

**Response:** The assertions in this paragraph are disputed, since Defendant did not "fail[]" to pay any amounts due. The parties entered into the Term Sheet which provides that the source of repayment of Plaintiff's $3,000,000 advance to Defendant, along with interest and other amounts, would be from the gross receipts of the Shadowplay project in accordance with a payment waterfall set forth in a separate Collection Account Management Agreement. Cloth Decl., Ex. B at pp. 1-2. Thus, notwithstanding any "Maturity Date" in the Note, repayment was conditioned on Shadowplay's generation of sufficient gross receipts. Because the Shadowplay

5

project did not generate sufficient gross receipts to repay Plaintiff, no amount is due and owing to Plaintiff. Cloth Decl. ¶¶ 7-11.

13. Thus, the Note is currently in default. (*Id.* ¶ 14).

**Response:** The assertions in this paragraph are disputed, since Defendant did not fail to pay any amounts due and the Note is not currently in default. The parties entered into the Term Sheet which provides that the source of repayment of Plaintiff's $3,000,000 advance to Defendant, along with interest and other amounts, would be from the gross receipts of the Shadowplay project in accordance with a payment waterfall set forth in a separate Collection Account Management Agreement. Cloth Decl., Ex. B at pp. 1-2. Thus, notwithstanding any "Maturity Date" in the Note, repayment was conditioned on Shadowplay's generation of sufficient gross receipts. Because the Shadowplay project did not generate sufficient gross receipts to repay Plaintiff, no amount is due and owing to Plaintiff. Cloth Decl. ¶¶ 7-11.

14. Under Section 2.1 of the Note, if the Principal Note Amount plus accrued interest thereon is not paid by the Maturity Date, Plaintiff is entitled to additional interest of 1.5% per month commencing on the first business day of the next month, on the entire outstanding balance, until such time as all amounts are fully repaid. (Conover Decl., Ex. A, § 2.1).

**Response:** The assertions in this paragraph are not disputed to the extent that the Note is a document that speaks for itself.

15. Plaintiff is entitled to pre-judgment and post-judgment interest: (a) on the Principal Note Amount, at the rate of 10% per annum (compounded annually) from July 16, 2020 through December 31, 2021, which amounts to $3,447,989.35; and (b) on the entire outstanding balance, at the rate of 1.5% per month from January 3, 2022, which amounts to $4,016,907.59 through December 1, 2022. (Conover Decl. ¶ 16).

**Response:** The assertions in this paragraph are disputed, since Defendant did not fail to pay any amounts due and the Note is not in default. The parties entered into the Term Sheet which provides that the source of repayment of Plaintiff's $3,000,000 advance to Defendant, along with interest and other amounts, would be from the gross receipts of the Shadowplay project in accordance with a payment waterfall set forth in a separate Collection Account Management Agreement. Cloth Decl., Ex. B at pp. 1-2.  Thus, notwithstanding any "Maturity Date" in the Note, repayment was conditioned on Shadowplay's generation of sufficient gross receipts. Because the Shadowplay project did not generate sufficient gross receipts to repay Plaintiff, no amount is due and owing to Plaintiff.  Cloth Decl. ¶¶ 7-11.

16. In Section 5.5 of the Note, Defendant agreed to reimburse Plaintiff for all reasonable attorneys' fees and expenses incurred by Plaintiff in connection with the collection and enforcement of the Note. (*Id.* § 5.5).

**Response:** The assertions in this paragraph are not disputed to the extent that the Note is a document that speaks for itself.

## DEFENDANT'S COUNTERSTATEMENT OF ADDITIONAL MATERIAL UNDISPUTED FACTS

17. Plaintiff and Defendant entered into a Loan and Security Agreement ("LSA"), dated as of July 7, 2020.  Cloth Decl., Ex. A.

18. The LSA incorporates the terms of the Note and another document titled, Term Sheet Financing For Series Project Entitled "Shadowplay" (Episodes 101-108) ("Series")), dated as of July 7, 2020, as amended on July 16, 2020 (the "Term Sheet"). Cloth Decl., Ex. A at p. 1.

19. Plaintiff and Defendant entered into the Term Sheet contemporaneously with the Note.  Cloth Decl. Ex. B; Conover Decl. Ex. A.

20. The Term Sheet provides that Defendant and a non-party, Shadowplay Series Holdings UK Limited, previously entered into an agreement under which Defendant agreed to finance the production of Shadowplay and that Plaintiff was advancing $3,000,000 to Defendant to partially fund Defendant's financing obligations. Cloth Decl., Ex. B at pp. 1-2.

21. The Term Sheet provides that the source of repayment of Plaintiff's $3,000,000 advance to Defendant, along with interest and other amounts, would be from the gross receipts of the Shadowplay project in accordance with a payment waterfall set forth in a separate Collection Account Management Agreement. *Id.* at p. 2.

22. In particular, the Term Sheet provides, in pertinent, part:

| **Source of Repayment** | The Loan, inclusive of the Facilitation Fee, the Interest and the Net Profit Participation (defined below) shall all be recouped from gross receipts generated by the Project, if any, in accordance with the Collection Account Management Agreement ("CAMA"). |

*Id.*

23. In the Term Sheet, Plaintiff represented and warranted that it "has relied on its own examination of the investment hereunder including, but not limited to, the Loan and Security Agreement and the merits and risks involved. Investor is aware that it may be required to bear the financial risks of this investment for an indefinite period of time." *Id.* at 5.

24. The Term Sheet also provides, in pertinent part, that it "contains the entire understanding of the Parties relating to its subject matter and supersedes and replaces all prior agreements and understandings, written or oral." *Id.* at p. 7.

Dated: New York, New York
December 16, 2022

**HERRICK, FEINSTEIN LLP**

By: */s/ Samuel J. Bazian*

William R. Fried
Samuel J. Bazian
Two Park Avenue
New York, New York 10016
(212) 592-1400

*Attorneys for Defendant Creative Wealth Media Finance Corp.*