UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

HUDSON PRIVATE LP,

                Plaintiff,

          v.

CREATIVE WEALTH MEDIA FINANCE
CORPORATION,

                Defendant.

22 Civ. 5520 (PAE)

OPINION & ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

       This action arises out of the financing for a television series, *Shadowplay*. In July 2020, plaintiff Hudson Private LP ("Hudson Private") and defendant Creative Wealth Media Finance Corporation ("Creative Wealth") executed a promissory note, Dkt. 47-1 (the "Note"), in connection with a loan Hudson Private made to finance *Shadowplay*. Hudson Private claims here that Creative Wealth has defaulted on the Note. It now moves, pre-discovery, for summary judgment on liability and damages. It seeks (1) $3 million in principal; (2) contractual interest at the rate of 10% per annum (compounded annually) from July 16, 2020 through December 31, 2021; (3) additional interest at the rate of 1.5% per month from January 3, 2022 through the date of collection; and (4) attorneys' fees and expenses incurred in connection with the collection and enforcement of the Note. Creative Wealth opposes the motion, on the ground that, reading the Note in conjunction with other transaction documents, its obligation to repay was conditioned on *Shadowplay*'s generation of sufficient gross receipts—which did not occur because the show proved financially unsuccessful.

       For the reasons that follow, the Court denies Hudson Private's motion for summary judgment and directs that the case proceed to discovery.

I.  **Background**[1]

    A.  **Factual Background**

On July 16, 2020, Hudson Private executed the Note with Creative Wealth in the principal amount of $3 million as part of a loan made by Hudson Private to Creative Wealth to finance several episodes of *Shadowplay*. Pl. 56.1 ¶ 1. According to Hudson Private, the Note required Creative Wealth unconditionally to repay the principal in full, with interest, by the earlier of (1) the delivery of the final episode of *Shadowplay*; or (2) December 31, 2021, the "maturity date." *Id.* ¶ 3. The final episode of *Shadowplay* aired before December 31, 2021. *Id.* ¶ 4. Under the Note, the principal amount accrued interest from July 16, 2020 at the rate of 10% per annum, compounded annually thereon. *Id.* ¶ 5. The Note carried additional terms under which interest would accumulate at 1.5% per month on the outstanding balance after passage of the maturity date. *Id.* ¶ 15.

Hudson Private and Creative Wealth executed two other transaction documents around the time of the Note.

---

[1] The Court draws its account of the underlying facts of this case from the parties' submissions in support of and in opposition to Hudson Private's summary judgment motion. These include: (1) in support of the motion, a memorandum of law, Dkt. 50, declarations and attached exhibits, Dkts. 47–48, a Local Rule 56.1 statement, *see* Dkt. 49 ("Pl. 56.1"); *see also* Dkt. 55, and a reply memorandum of law, Dkt. 54 ("Reply"); and (2) in opposition to the motion, a memorandum of law, Dkt. 51, a declaration and attached exhibits, Dkt. 52, and a Local Rule 56.1 statement, *see* Dkt. 53 ("Def. 56.1").

Citations to a party's Rule 56.1 statement incorporate by reference the materials cited therein. Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts true. *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

First, on July 7, 2020, and as amended on July 16, 2020, they entered into the Loan and Security Agreement (the "LSA"). Def. 56.1 ¶ 17; *see* Dkt. 52-1 ("LSA"). The LSA incorporates the terms of the Note. Def. 56.1 ¶ 18.

Second, on July 16, 2020—the same day as the Note—Hudson Private and Creative Wealth entered into a contract titled "Term Sheet Financing for Series Project Entitled 'Shadowplay' (Episodes 101–108) ('Series'))." *Id.* ¶ 19 (dated July 7, 2020 and amended on July 16, 2020); *see* Dkt. 52-2 (the "Term Sheet"). The LSA also incorporates the terms of the Term Sheet. Def. 56.1 ¶ 18. The Term Sheet notes that Creative Wealth and a non-party, Shadowplay Series Holdings UK Limited, previously entered into an agreement under which Creative Wealth agreed to finance the production of *Shadowplay*; and that Hudson Private would advance $3 million to Creative Wealth to partially fund Creative Wealth's financing obligations. *Id.* ¶ 20. The Term Sheet provides, in a provision entitled "Source of Repayment," that "[t]he Loan . . . shall . . . be recouped from gross receipts generated by the Project, if any." *Id.* ¶ 22. The parties dispute whether the effect of this provision is to limit Hudson Private's right to repayment so as to come only from the gross receipts of the *Shadowplay* project. *Id.* ¶ 21.

The Note, LSA, and Term Sheet each contain integration provisions, reviewed below. *See* Pl. 56.1 ¶ 8; Def. 56.1 ¶ 24; *see also* Note § 5.13; LSA § 8.8; Term Sheet at 7.

### B.     Procedural Background

On March 1, 2022, Hudson Private filed suit against Creative Wealth in New York State Supreme Court in Manhattan. *See* Dkt. 1 (notice of removal). In lieu of a complaint, Hudson Private filed a summons and an accompanying motion for summary judgment, pursuant to New York Civil Practice Law and Rule § 3213. *See id.*

On June 28, 2022, Creative Wealth removed the matter to federal court. *See id*. On July 11, 2022, Hudson Private moved to remand to state court, Dkt. 9, filing a supporting declaration, Dkt. 10, and a memorandum of law, Dkt. 11. It argued that Creative Wealth's removal had been untimely, coming more than 30 days after Creative Wealth had been served. On July 12, 2022, this Court adjourned an initial pretrial conference scheduled for August 3, 2022, pending resolution of the motion to remand. Dkt. 13. On July 25, 2022, Creative Wealth opposed remand, Dkt. 15, and filed accompanying declarations, Dkts. 16–17. On July 29, 2022, Hudson Private replied. Dkt. 18.

On August 17, 2022, the Court notified the parties of its intention to hear testimony about the circumstances surrounding Hudson Private's attempt to serve Creative Wealth on March 16, 2022, at Creative Wealth's Toronto office. Dkt. 19. On September 6, 2022, the Court held the hearing—remotely by video, with the parties' consent. *See* Dkt. 20. On September 21, 2022, the Court denied the motion to remand after determining that Hudson Private had not met its burden to properly serve Creative Wealth on or before May 29, 2022. Dkt. 21.

On November 1, 2022, Creative Wealth moved to consolidate this matter with a matter in this District before the Hon. Cathy Seibel, *Hudson Private LP v. Bron Studios USA, Inc.* ("*Bron Studios*"), 21 Civ. 08259 (CS). *See* Dkts. 32–35. On November 3, 2022, Hudson Private opposed the motion. *See* Dkts. 36–37. On November 10, 2022, the Court denied the motion after Judge Seibel declined to accept this case as related to *Bron Studios*. Dkt. 38.

On November 18, 2022, the Court held an initial conference, at which Hudson Private's counsel indicated that Hudson Private intended to move for summary judgment before discovery, which the Court permitted. *See* Dkt. 44. On December 2, 2022, Hudson Private moved for

summary judgment. *See* Dkts. 46–50. On December 16, 2022, Creative Wealth opposed the motion. *See* Dkts. 51–53. On December 20, 2022, Hudson Private replied. *See* Dkts. 54–55.

## II.   Discussion

Hudson Private depicts this dispute as so straightforward as to not require discovery. It contends that the Note is the sole document bearing on Creative Wealth's repayment obligation. Under the Note, Hudson Private observes, Creative Wealth promised to repay it the principal amount plus accrued interest thereon on the maturity date, and did so "without set-off or counterclaim, free and clear of and without deduction for any present or future taxes, restrictions or conditions of any nature." Note § 2.2. Because Creative Wealth has not made the repayment, Hudson Private contends, it defaulted on the Note, warranting pre-discovery entry of summary judgment in Hudson Private's favor.

Creative Wealth depicts its repayment obligation as defined not by the Note alone, but by the Note as read in combination with two contemporaneous transaction documents: the LSA and the Term Sheet. It notes that the LSA provides that the Note and Term Sheet "are attached to this Agreement and form an integral part hereof." LSA at 1. And it notes that the Term Sheet states that Hudson Private's "Source of Repayment" would be "the gross receipts generated by the Project, if any," Term Sheet at 3, to condition its duty of repayment on *Shadowplay*'s generating sufficient gross receipts. Because *Shadowplay* did not generate sufficient gross receipts to repay Hudson Private, Dkt. 52 ¶ 11, Creative Wealth contends, it owes Hudson Private nothing under the Note.

The parties' dispute, therefore, appears to turn on which transactional documents govern Hudson Private's financing of *Shadowplay*. Second Circuit case authority supports Creative Wealth's thesis that transaction documents beyond the Note have the potential to bear on its

5

repayment obligation. "Under New York law,[2] instruments executed at the same time, by the same parties, for the same purpose[,] and in the course of the same transaction will be read and interpreted together," *Carvel Corp. v. Diversified Mgmt. Grp., Inc.*, 930 F.2d 228, 233 (2d Cir. 1991), "but only if the parties so intended," *Lowell v. Twin Disc, Inc.*, 527 F.2d 767, 769–70 (2d Cir. 1975). *See also Nat'l Bank of Watervliet v. Martin*, 196 N.Y.S. 714, 716 (1922) ("The general rule regarding [promissory] notes and bills of exchange is that contemporaneous agreements affecting such notes or bills must as between parties be read in connection with such instruments."), *aff'd*, 235 N.Y. 611 (1923). "[T]he primary standard is the intent manifested . . . ." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*, 892 F.2d 199, 204 (2d Cir. 1989) (internal quotation marks omitted). "Whether the parties intended that the . . . agreements should be interdependent is a question of fact which turns upon the circumstances of each case." *Lowell*, 527 F.2d at 769–70.

The parties' intent here cannot be confidently determined at this preliminary stage. Even with the benefit of discovery, "[q]uestions of intent . . . are usually inappropriate for disposition on summary judgment." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 892 F.2d at 205. Here, with no discovery having been taken, the Court has only the transaction documents themselves to rely upon. And these documents give rise to a material issue of fact, because they point in contradictory directions. The Note contains a complete integration provision that would suggest

---

[2] The parties have analyzed Creative Wealth's claims solely under New York law. And the Note contains a choice-of-law provision stating that it "will be governed and construed in accordance with the laws of the State of New York." Note § 5.7. Where "[t]he parties' briefs assume that New York substantive law governs the issues presented, . . . such implied consent is, of course, sufficient to establish the applicable choice of law." *Arch Ins. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)); *see Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000). The Court follows the parties' lead and applies New York law here. *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997).

that it is to be read in isolation, *see* Note § 5.13 ("This instrument represents the entire agreement between the parties hereto with respect to this Note, the debt evidence by this Note, and its terms and conditions."), thus neutralizing the Term Sheet's "Source of Repayment" provision. But the LSA and Term Sheet each contain integration provisions that would appear to give life to the Term Sheet's "Source of Repayment" provision. *See* LSA § 8.8 ("This Agreement, the Note and the documents, instruments and agreements delivered (or to be delivered) pursuant hereto shall constitute the entire agreement between the parties hereto with respect to the Loan and shall supersede all other agreements written or oral with respect thereto."); Term Sheet at 7 ("This Term Sheet contains the entire understanding of the Parties relating to its subject matter and supersedes and replaces all prior agreements and understandings, written or oral.").

Hudson Private has not supplied authority empowering the Court, without discovery, to reconcile these provisions in favor of reading the Note alone. On the contrary, authorities such as *Carvel Corp.* appear to support, absent evidence of contrary intent, reading the Note, LSA, and Term Sheet together, including insofar as these appear to have been "executed at the same time, by the same parties, for the same purpose[,] and in the course of the same transaction." *Carvel Corp.*, 930 F.2d at 233. The tension between the provisions in these documents gives rise to a question of fact about the parties' intent as to the interplay, if any, of these documents. This, the Court concludes, cannot be reliably resolved without the benefit of discovery. *See Morse, Zelnick, Rose & Lander, LLP v. Ronnybrook Farm Dairy, Inc.*, 939 N.Y.S.2d 365, 366 (2012); *Madeleine, L.L.C. v. Casden*, 950 F. Supp. 2d 685, 696 (S.D.N.Y. 2013).

Hudson Private makes two arguments why, even if all three transaction documents are properly considered, there is no dispute of fact as to Creative Wealth's liability to it.

First, it submits an April 19, 2021 attestation on a document by Creative Wealth's Managing Partner, Jason Cloth ("Cloth"), which Hudson Private reads to acknowledge that, as of December 31, 2020, Creative Wealth owed Hudson Private the principal amount of $3 million, plus accrued interest, under the Note. *See* Dkt. 47-2 ("Cloth Attestation"). A writing from a party representative squarely admitting a party's financial liability could of course be probative of that point. *See In re Interstate Cigar Co., Inc.*, 171 B.R. 6, 9–10 (E.D.N.Y. 1994). But the Cloth Attestation falls short of doing so. It appears on a letter dated February 11, 2021, from a Hudson Private portfolio manager, which states that as of December 31, 2020, there was a $3 million outstanding principal balance on the loan; the letter, by its terms, was prepared to furnish 2020 year-end financial information to Hudson Private's auditors. At the bottom appears Cloth's signature, dated April 19, 2021. Critically, however—and ignored by Hudson Private—the letter as signed by Cloth includes the handwritten notation "LSA" in response to the question, "Please describe the amount and nature of any collateral related to the loan." That question and answer appear immediately above Cloth's signature; the "LSA" notation appears to be in the same handwriting as Cloth's signature. That feature of the letter complicates Hudson Private's claim that the Cloth Attestation decides this case, because it appears to treat the LSA, as opposed to the Note alone, as bearing on Creative Wealth's liability. Discovery is necessary to illuminate the meaning and force of the Cloth Attestation.

Second, Hudson Private argues that even if the Court were to treat all three transactional documents as governing the parties' relationship, the Note's language controls, because the Term Sheet, as it puts the point, "does not state that [*Shadowplay*'s] gross receipts [are] the *only* source of payment." Reply at 2 (emphasis added). The operative Term Sheet language, however, does not unequivocally favor Hudson Private on this point. The Term Sheet, in a boxed section titled

"Source of Repayment," states: "The Loan, inclusive of the Facilitation Fee, the Interest and the Net Profit Participation (defined below) shall all be recouped from gross receipts generated by the Project, if any, in accordance with the Collection Account Management Agreement ('CAMA')." Term Sheet at 3. The language "shall all be recouped," modified with "gross receipts . . . , if any," can plausibly be read to make the receipts of the project the only reachable source of repayment funds. The Court cannot, without discovery, assuredly read this provision in Hudson Private's favor.

In sum, Hudson Private's arguments for the pre-discovery entry of summary judgment in its favor are unavailing, because material disputes of fact exist as to which transactional documents govern Creative Wealth's repayment obligation and as to the import of those documents. The Court accordingly denies Hudson's Private's motion for summary judgment, without prejudice to its right to pursue summary judgment following the close of discovery.

## CONCLUSION

For the reasons stated above, the Court denies Hudson Private's motion for summary judgment. The Clerk of Court is respectfully directed to close the motion at docket entry 46. This litigation will proceed to discovery. The parties are directed to file, by June 7, 2023, a joint case management plan in accordance with the Court's Individual Rules and Practices.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: May 25, 2023
      New York, New York